This appeal is from an interpleader action in which two unsecured creditors challenged another creditor's assertion that it is secured by a security agreement. The specific issue is whether the trial court, in entering a summary judgment in favor of AmSouth Bank, N.A., properly held that AmSouth's security agreement was valid and enforceable against two unsecured creditors because of a so-called "dragnet" provision in the security agreement.
The undisputed facts are as follows: In connection with the construction of a section of an Alabama state highway, Milton Construction Company, Inc. (hereinafter referred to as "Milton") hired A M, Inc., as a subcontractor on the project. A M subsequently contracted with two subcontractors, Southern Ready Mix, Inc., and Batey Sanders, Inc., for them to provide materials and services in connection with *Page 189 
the highway construction. When Southern Ready Mix filed suit against A M for the amount owed it, Milton initiated an interpleader action to discharge its debt to A M in connection with the construction and paid $57,102.63 to the clerk of the Jefferson County Circuit Court. Southern Ready Mix and Batey Sanders notified Milton that A M had not paid them in full in connection with the construction. Southern Ready Mix claimed $58,984.21 plus reasonable attorney fees, and Batey Sanders claimed that it was owed $4,850.28. Additionally, AmSouth notified Milton that A M owed it $78,147 plus reasonable attorney fees pursuant to its security agreement giving it a priority interest in A M's accounts receivable.
AmSouth filed a motion for summary judgment, claiming it had a security interest in A M's accounts receivable. The trial court agreed and entered summary judgment in favor of AmSouth, finding that pursuant to the clear and unequivocal language of the "dragnet" clause in AmSouth's security agreement with A 
M, AmSouth had a perfected security interest in A M's accounts receivable and, therefore, was entitled to priority in Milton's interpleaded funds. Southern Ready Mix and Batey 
Sanders (hereinafter referred to collectively as the "appellants") appeal, claiming that AmSouth's security agreement is invalid and that AmSouth is not entitled to priority.
On June 16, 1987, A M entered into a security agreement with AmSouth. This agreement provided in pertinent part as follows:
 "[T]he Borrower hereby grants to the Lender security title to and continuing security interest in . . . all of the Borrower's right . . . to . . . all of the Accounts of the Borrower, now existing and acquired, created or arising from time to time hereafter. . . . No submission by the Borrower to the Lender of a schedule or other particular identification of collateral shall be necessary to vest in the Lender security title to and a security interest in each and every item of collateral of the Borrower now existing or hereafter created and acquired, but rather such title and security interest shall vest in the Lender immediately upon creation or acquisition of any item of collateral hereafter created or acquired, without the necessity for any other or further action by the Borrower or by the Lender."
This agreement was filed with the secretary of state on June 18, 1987. Although AmSouth advanced no loan to A M at that time, A M subsequently signed two notes to AmSouth: one on August 1, 1988, and the second on April 4, 1989, totaling $86,119.95. These notes were secured by distinct collateral designated on each note. The appellants maintain that the June 1987 security agreement between AmSouth and A M was not supported by any value, and that Milton's interpleaded funds should be distributed pro-rata between each appellant and AmSouth.
AmSouth, however, asserts the validity of its security agreement and cites Ala. Code (1975), § 7-9-204:
 "(1) Except as provided in subsection (2), a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.
"(2) [Subsection (2) involves consumer goods.]
 "(3) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (subsection (1) of section 7-9-105)."
AmSouth also cites as controlling the case of Dixie AgSupply, Inc. v. Nelson, 500 So.2d 1036 (Ala. 1986). In that case, the debtor signed a security agreement containing a "dragnet" clause similar to the one signed by A M in the present case. The issue in that case was whether one creditor's security agreement extended to the debtor's antecedent indebtedness to another creditor. The jury found in favor of the unsecured creditor and this Court reversed:
 "It is the law in Alabama, however, that a dragnet clause which, although *Page 190 
not itemizing the existing indebtedness, does, by clear and unequivocal terms, reference and include a specific and identifiable antecedent debt, extends the coverage of the security agreement to that antecedent debt. The dragnet clause, therefore, may be given the full effect of its terms."
500 So.2d at 1040.
Although we find Dixie Ag Supply persuasive, we are concerned here with whether the creditor's security agreement extends to the debtor's subsequent indebtedness to other creditors.
Ala. Code (1975), § 7-9-203(1), states:
 "[A] security agreement is not enforceable against the debtor or third persons with respect to the collateral and does not attach unless:
 "(a) The collateral is in the possession of the secured party pursuant to the agreement, or the debtor has signed a security agreement which contains a description of the collateral . . .; and
"(b) Value has been given; and
"(c) The debtor has rights in the collateral."
Subsection (2) provides:
 "A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching."
The requirement of value in subsection (1), above, was discussed in First Maryland Leasecorp. v. M/V Golden Egret,764 F.2d 749 (11th Cir. 1985). That court quoted Ala. Code 1975, §7-1-201(44), which defines "value":
 "[A] person gives 'value' for rights if he acquires them:
 "(a) In return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon and whether or not a charge-back is provided for in the event of difficulties in collection; or
 "(b) As security for or in total or partial satisfaction of a preexisting claim; or
". . . .
 "(d) Generally, in return for any consideration sufficient to support a simple contract."
Applying this definition of "value" to the facts in that case, the Court of Appeals held for the party claiming a perfected security interest, stating that the "undisputed obligation to extend credit . . . was certainly 'consideration sufficient to support a simple contract.' " 764 F.2d at 753.
White and Summers state that under the Uniform Commercial Code, § 1-201(44)(a) and (d) (see Ala. Code 1975, §7-1-201(44)(a) and (d)), a creditor's binding executory promise to extend credit or to make a loan constitutes value as of the time when the creditor's promise becomes binding. 2 J. White 
R. Summers, Uniform Commercial Code § 24-6 at 320 (3rd ed. 1988).
Several cases from other jurisdictions help illuminate the applicability of these U.C.C. sections. In State Bank TrustCo. of Beeville v. First Nat'l Bank of Beeville,635 S.W.2d 807, 809 (Tex.App. 1982), the court held that "a promise on the part of [the bank] to extend credit to the debtor . . . constituted 'value' given." The Supreme Court of Montana similarly held that one gives value for rights if he acquires them in return for a binding commitment to extend credit for the extension of immediately available credit, whether or not drawn upon. Taylor Rental Corp. v. Ted Godwin Leasing,209 Mont. 124, 681 P.2d 691, 697 (1984).
Based upon the clear and unambiguous wording of the applicable Ala. Code sections and upon the cases interpreting those sections, we agree with the trial court that AmSouth's June 16, 1987, security agreement with A M is valid and enforceable.
We now address whether A M's two subsequent notes to AmSouth were intended to be secured by their June 16, 1987, security agreement. The aforementioned "dragnet" clause in AmSouth's June 1987 security agreement is valid in Alabama. *Page 191 Ala. Code 1975, § 7-9-204; Ex parte Chandler, 477 So.2d 360
(Ala. 1985); Underwood v. Jarvis, 358 So.2d 731 (Ala. 1978);First National Bank of Guntersville v. Bain, 237 Ala. 580,188 So. 64 (1939). Such clauses may secure debts between the parties to the agreement other than the debt that is specified in the agreement. Although there is additional collateral listed on A M's two subsequent notes to AmSouth, we find nothing in the record that would show that A M and AmSouth did not intend their June 16, 1987, security agreement to apply to any and all future advances from AmSouth to A M.
Based on the foregoing, we hold that AmSouth has a valid and enforceable security interest in A M's accounts receivable, as clearly referenced in the dragnet clause of AmSouth's June 16, 1987, security agreement. As a secured creditor, AmSouth is entitled to A M's accounts receivable from Milton. We agree with the trial court that only after AmSouth's secured debt has been satisfied from A M's accounts receivable, may the appellants, as unsecured creditors, recover from A M amounts due them.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.