In re Terry D. KENNEMER, Debtor.

ROCKET CITY FEDERAL CREDIT UNION, Appellant,

v.

Terry D. KENNEMER, Appellee.

No. CV91–H–0156–NE.

United States District Court, N.D. Alabama, Northeastern Division.

July 3, 1992.

Brent Alden King, Trimmier & Associates, Decatur, Ala., for appellant.

Randall O. Gladden, Huntsville, Ala., for appellee.

Frances K. Bissell, Huntsville, Ala., trustee.

## MEMORANDUM OF DECISION

HANCOCK, District Judge.

This case is before the court on appeal from the United States Bankruptcy Court for the Northern District of Alabama, Northeastern Division. On July 31, 1990, Terry D. Kennemer ("Appellee") filed his petition for relief under Chapter 7 of the Bankruptcy Code. Rocket City Federal Credit Union ("Appellant") then filed a motion for relief from the automatic stay on August 21, 1990. After a hearing, the Bankruptcy Judge denied this motion in his October 9, 1990 order, holding that none of the loan documents evidencing the three loans made by the Credit Union to the appellee contained a valid future advance clause, and that the debtor was not in default on his August 10, 1988 loan and was thus entitled to reaffirm this debt. The issues presented on appeal are whether the loan documents signed by the debtor/appellee contained a valid future advance clause, whether the loan documents evidencing the debts complied with the requirements of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, whether appellee was in default on all three loans held by the appellant, whether the appellee was entitled to reaffirm his August 10, 1988 debt under 11 U.S.C. § 524(e), and whether appellant was entitled to relief from the automatic stay pursuant to the provisions of 11 U.S.C. § 362(d).

The following relevant facts are not disputed: 1) On January 25, 1988, Terry Kennemer executed a "Loanliner Credit Agreement and Truth–in–Lending Disclosure" ("Loanliner Agreement") with the appellant. This credit agreement detailed the different interest rates available for various types of vehicle loans and secured advances, and provided for subsequent advances of money from time to time with credit union approval[1]; 2) On August 10,

---

1. Although the Bankruptcy Court never referred to the Loanliner Agreement in his memorandum of decision, this court is of the opinion that several key provisions embodied in that agreement are dispositive of the issues raised on appeal. The Loanliner Agreement provides in relevant part:

    **HOW THIS PLAN WORKS**—The credit union anticipates that you will borrow money (called advances) under this Plan from time to time. The credit union, however, is not required to make advances to you under this Plan and can refuse a request for an advance at any time ...

    **PROMISE TO PAY**—You promise to repay to the credit union all advances made to you under this Plan ... You promise to pay interest on what you owe until the total amount has been repaid ...

    **SECURITY INTEREST**—You agree that all advances under this Plan will be secured by the shares and deposits in all joint and individual accounts you have with the credit union now and in the future ... **Property given as security under this Plan or for any other loan may secure all amounts you owe the credit union now and in the future** ...

    **DEFAULT**—You will be in default if you do not make a payment of the amount required when it is due ... [or] if you ... file for bankruptcy or become insolvent ... You will also be in default if something happens which the credit union believes may substantially reduce your ability to repay what you owe. When you are in default the credit union can demand immedi-

1988, appellee executed his first "Loanliner Advance Request Voucher and Security Agreement" ("Loanliner Advance Request")[2] in the amount of $3000.00 for the purchase of a 1986 Dodge Ram truck. This loan was secured by appellee's signature and the truck itself[3]. Appellee currently owes the principal amount of $1,674.25, and he wishes to reaffirm this debt; 3) On January 13, 1989, the appellee executed a second Loanliner Advance Request for $436.94[4]. He currently owes $384.41 on this loan; 4) On March 14, 1989, debtor executed a third Loanliner Advance Request in the amount of $10,710.00 for the purchase of a boat, boat motor, and trailer. The appellee's signature and the boat itself were designated as security for this third advance[5]; 5) Appellee notified the Credit Union sometime in July that he was consulting an attorney about the possibility of filing for bankruptcy. He did not remit his July payments on either the January, 1989 or the March, 1989 loans; 6) On July 18, 1990, the Credit Union notified the appellee by letter that because he was delinquent in these loan payments, all *three* loans were declared in default pursuant to the terms of the Loanliner Agreement executed by the appellee on January 25, 1988[6], and payment of the entire sum owed under the Loanliner line of credit plan was demanded in full; 7) Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on July 31, 1990, and, on August

---

ate payment of the entire amount you owe under this Plan without giving you advance notice.

At the bottom of the page containing the provisions enumerated above, the Loanliner Agreement further provides:

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

The appellee signed the Loanliner Agreement directly beneath this provision, and the agreement thus became effective on January 25, 1988.

2. All three Loanliner Advance Requests executed by the appellee provide that "[y]ou request the following advance subject to the terms and conditions of your Loanliner Credit Agreement". Each Loanliner Advance Request also contains the following dispositive provisions:

**WHAT THE SECURITY INTEREST COVERS**—The security interest secures the advance ... It also secures any other advances you have now **or receive in the future under the Loanliner Credit Agreement and any other amounts you owe the credit union for any reason now or in the future.** If the property description is marked with two stars (**), the property will secure only the advance and not other amounts you may owe ...

DEFAULT—You will be in default if you break any promise you make under this agreement. You will also be in default if you are in default under the Loanliner Credit Agreement.

The appellee signed each Loanliner Advance Request directly beneath a provision stating:

THE TERMS OF YOUR SECURITY AGREEMENT ARE ON THE REVERSE SIDE. IF YOU AGREE TO MAKE AND BE BOUND BY THE PROMISES IN THE SECURITY AGREEMENT, SIGN BELOW OR SIGN UNDER THE ACKNOWLEDGMENT ON THE ADVANCE PROCEEDS CHECK.

A second provision directly beneath the appellee's first signature indicates that, by signing this second line, "YOU AGREE TO MAKE PAYMENTS OF THE AMOUNT AND AT THE TIME SHOWN IN THE SECTION ABOVE ENTITLED PAYMENT TERMS." Appellee signed all three Loanliner Advance Requests directly beneath this second signature provision as well.

3. The Credit Union properly perfected its security interest in the truck as is evidenced by the August 31, 1988 certificate of title.

4. No specific collateral is designated as security for this second Loanliner advance of $436.94. However, the Credit Union contends that the appellee is bound by the terms of the January 25, 1988 Loanliner Agreement, which provides that any collateral designated as security for an advance under the Loanliner line of credit plan also secures *all* future advances made under the plan. Appellant thus asserts that the 1986 Dodge Ram Truck, which was designated as security for the August 10, 1988 advance, also serves as security for the January 13, 1989 advance. The Bankruptcy Judge, however, apparently rejected this argument, and held in his October 9, 1990 order, that this second advance of $436.94 was an unsecured loan, and was thus dischargeable in bankruptcy.

5. The Credit Union properly perfected its security interest in the boat, motor, and trailer with the filing of a financing statement. However, this third advance is not at issue in this action, since the debtor surrendered the collateral to the appellant prior to the September 25, 1990 hearing before the Bankruptcy Judge.

6. As noted *supra* in note 1, the default provision in the Loanliner Agreement provided that the debtor could be declared in default if he did "not make a payment of the amount required when it is due ... When you are in default the credit union can demand immediate payment of the entire amount you owe under this Plan."

21, 1990, appellant moved for relief from the automatic stay pursuant to the provisions of 11 U.S.C. § 362(d); 8) On October 9, 1990, the Bankruptcy Court denied the motion for relief from the automatic stay; 9) The appellant moved for alteration or amendment of the judgment on October 19, 1990, but the motion was denied by the Bankruptcy Court on December 3, 1990; and 10) On December 11, 1990, appellant timely filed its notice of appeal of the Bankruptcy Judge's decision to this court.

The court first notes that in examining the factual findings made by the Bankruptcy Judge, its review is limited to determining whether the findings of fact were *clearly erroneous.* Bankruptcy Rule 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.") However, the Bankruptcy Court's findings of law are subject to this court's *de novo* review. *In re Fielder,* 799 F.2d 656, 657 (11th Cir.1986) (The reviewing court must "giv[e] deference to all findings of fact by the fact finder if based upon substantial evidence, but [may] freely examin[e] the applicable principles of law to see if they were properly applied").

■ The first issue presented on appeal is whether the loan documents executed by the appellee contained an enforceable future advance clause. In the Loanliner Agreement signed by the appellee on January 25, 1988, the paragraph entitled "Security Interest" clearly states that "[p]roperty given as security under this Plan or for any other loan **may secure all amounts you owe the credit union now and in the future."** (emphasis added). Each of the three Loanliner Advance Request Vouchers subsequently executed by the appellee provide that property designated as security for that particular advance "secures the advance ... It also secures any other advances you have now **or receive in the future under the Loanliner Credit Agreement and any other amounts you owe the credit union for any reason now or in the future."** (emphasis added). While each Loanliner Advance Request further provides that, "if the property description is marked with two stars (**), the property will secure only the advance and not other amounts you may owe", none of the three Loanliner Advance Requests executed by the appellee limit the Credit Union's security interest in the designated property as security for that advance only. After examining the entire record, the court agrees with the appellant that the Bankruptcy Judge's determination that no valid future advance clause was embodied in any of the loan documents executed by the appellee was clearly erroneous. Alabama courts unequivocally recognize the validity of future advance, or "dragnet" clauses. *Ex parte Chandler,* 477 So.2d 360, 362 (Ala. 1985) ("[F]uture advance clauses are valid in Alabama ... Such clauses may secure an indebtedness other than that which is specified in the security agreement.") (citations omitted); *Underwood v. Jarvis,* 358 So.2d 731, 733 (Ala.1978); *American Nat. Bank & Trust Co. of Mobile v. Robertson,* 384 So.2d 1122, 1123 (Ala.Civ.App.1980); *Ala.Code* § 7-9-204(3) (1975) ("Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment.") Although the Bankruptcy Judge distinguished the *Robertson* case, *supra,* from the instant case on the basis that the future advance clause therein "explicitly identified the property which would serve as collateral for all future advances", this court does not read the *Robertson* holding as imposing a requirement that a valid future advance clause must contain a description of *all* of the property which may be named as collateral for advances made at a later time. *E.g. Southern Ready Mix, Inc. v. AmSouth Bank, N.A.,* 576 So.2d 188, 191 (Ala.1991) (The parties entered a security agreement containing a future advance clause which granted the lender a security interest in the borrower's existing and after-acquired accounts in return for periodic advances of funds. The Alabama Supreme Court held the future advance clause valid and enforceable despite the fact that the notes evidencing the two subsequent advances of funds from the lender listed *additional* as security for these sub-

sequent advances, noting that "[a]lthough there is additional collateral listed on ... [the] two subsequent notes ... we find nothing in the record that would show ... [the parties] did not intend their ... security agreement to apply to any and all future advances.") This court thus finds that the Bankruptcy Judge's determination that the future advance clause in the Loanliner Agreement was invalid because it did not explicitly identify the collateral given as security for the three subsequent advances made to the appellee is due to be reversed. The unambiguous contractual language embodied in the Loanliner Agreement and the three Loanliner Advance Request Vouchers clearly reflects the intent of the parties that collateral given as security for any advance pursuant to the terms of the Loanliner Agreement served as security for *all* subsequent advances made under the terms of the agreement, and an enforceable future advance clause was thus formed upon the appellee's January 25, 1988 execution of the Loanliner Agreement.

The next issue presented on appeal is whether the various loan documents executed by the appellee complied with the provisions of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Appellant asserts, and the court agrees, that the Loanliner Agreement and the three Loanliner Advance Request Vouchers constitute an "open end" credit plan, which is defined as "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions"[7]. 15 U.S.C. § 1602(i). While the Bankruptcy Judge did not specifically articulate a contrary finding in his memorandum opinion, he applied the Truth in Lending regulations for *closed end* credit plans, holding that the Act requires that future advance clauses specifically identify all secured collateral carried over from previous transactions. The Bankruptcy Judge thus

held that the appellant violated the Truth in Lending Act, since the January 13, 1989 Loanliner Advance Request did not clearly identify the 1986 Dodge Ram truck, given as security for the August 10, 1988 advance, as collateral securing this second advance as well. He further held that the January 13, 1989 loan was unsecured, and thus dischargeable in bankruptcy. The court agrees with the defendant that this error of law mandates reversal of the Bankruptcy Court's decision. The Truth in Lending Act simply requires, for open end credit plans where the credit advances are secured by property, that the creditor provide the debtor with "a statement that a security interest has been or will be taken in ... the property purchased as part of the credit transaction". 15 U.S.C. § 1637(a)(6); 12 C.F.R. § 226.6(c). The appellant in the instant case clearly complied with the applicable Truth in Lending Act regulations for open end credit agreements. The unequivocal terms set forth in the Loanliner Agreement disclosed to the appellee that any property given as security for advances made pursuant to the Loanliner credit plan secured all amounts presently owed to the Credit Union as well as all sums owed in the future[8]. Further, each of the three Loanliner Advance Request Vouchers executed by appellee explicitly provided that the specific property designated as security for that particular advance *also* served as security for any future advances made pursuant to the terms of the Loanliner Agreement[9]. While appellee does not argue that he did not receive notice of these provisions, the evidence clearly reveals that each loan document contained explicit provisions directly above the debtor's signature admonishing him to thoroughly read the terms of the contract, as his signature indicated his willingness to be bound by the terms of the credit agreement. The court thus finds that the Bankruptcy Judge's determination

---

7. As noted *supra* in note 1, the January 25, 1988 Loanliner Agreement provided, in a paragraph entitled "How This Plan Works", that "[t]he credit union anticipates that you will borrow money (called advances) under this plan from time to time." This language clearly reflects the

intent of the parties to establish an "open end" credit plan, as defined in 15 U.S.C. 1602(i).

8. *See* note 1, *supra.*

9. *See* note 2, *supra.*

that the loan documents evidencing the three credit advances did not comply with the requirements of the Truth in Lending Act is due to be reversed.

■ The next issue before the court is whether the appellant properly declared *all three* of the appellee's loans in default. It is undisputed that the appellee failed to remit his July payments on either the January, 1989 or March, 1989 advances, although he did timely submit his July payment on the August, 1988 truck loan. Apparently relying on his decision that the future advance clause in the Loanliner Agreement was invalid, the Bankruptcy Judge considered the three advances made to the appellee as *separate* loans, and held that the appellee was entitled to reaffirm his August, 1988 debt since he timely remitted this loan payment. This court, however, agrees with the appellant that under the terms of the Loanliner Agreement executed by the appellee, the three credit advances were part of a *single* open end line of credit financing arrangement, and that, pursuant to the unambiguous terms of the credit agreement, the debtor was properly declared in default on all *three* loans when he failed to make his July payments on both the January and March, 1989 loans. The Loanliner Agreement provides:

> **DEFAULT—**You will be in default **if you do not make a payment of the amount required when it is due** ... if you file for bankruptcy or become insolvent, that is, unable to pay your obligations when they are due ... **When you are in default the credit union can demand immediate payment of the entire amount** you owe under this Plan.

(Emphasis added). The appellee certainly had repeated notice that each Loanliner Advance Request Voucher he executed was subject to the terms of this default provision, as each voucher clearly stated that "[y]ou request the following advance **subject to the terms and conditions of your Loanliner Credit Agreement.**" After examining the record, the court agrees with the appellant that the Bankruptcy Judge's decision is clearly erroneous, and is due to be reversed. The parties clearly intended to be bound by the terms of the Loanliner Agreement and the Loanliner Advance Requests, and the terms of the default provision in the Loanliner Agreement support the court's finding that the debtor defaulted on *all* three advances when he defaulted on the January and March, 1989 loans. *E.g. American Nat. Bank & Trust Co. of Mobile v. Robertson,* 384 So.2d 1122, 1125 (Ala.Civ.App.1980) (After determining that the first note signed by the debtor contained a valid future advance clause, the court held that the creditor properly declared both this note and a subsequently executed note in default, despite the fact that the debtor failed to remit *only* the payment on the second note.) The Bankruptcy Court's decision that the debtor was entitled to reaffirm his August 10, 1988 debt is thus also due to be reversed, as the appellee was in default on this loan as well as the January and March 1989 loans.

■ The final issue presented on appeal is whether the Bankruptcy Judge erred in denying the appellant's requested relief from the automatic stay pursuant to the terms of 11 U.S.C. § 362(d)(2), which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ...
>
> (2) with respect to a stay of an act against property ... if—
>
> (A) the debtor **does not have an equity** in such property; and
>
> (B) such property is not necessary to an effective reorganization[10].

The appellant argues that relief from the automatic stay is due to be granted with respect to the 1986 Dodge Ram truck purchased by the appellee with the funds advanced pursuant to the August 10, 1988 credit advance, since appellee has no equity in this property. " 'Equity' as used in section 362(d) portends the difference between the value of the subject property and the

---

**10.** The appellant correctly asserts that in Chapter 7 cases, courts abandon the requirement of 11 U.S.C. § 362(d)(2)(B), as the debtor's legal

reorganization is not at issue. *In re Lyons,* 19 B.R. 66, 67 (Bankr.N.D.Ga.1982).

encumbrances against it." *Matter of Sutton*, 904 F.2d 327, 329 (5th Cir.1990) (citations omitted). Relying upon the debtor's testimony with respect to the value of the truck, the court presumes that the truck has a retail value of $1900.00 [11]. (Tr. p. 20). The sum total of the encumbrances against the truck is at least $2057.66 [12], which supports the court's determination that the debtor does not have any equity in the truck. The court thus finds that the Bankruptcy Judge's decision that the appellant was not entitled to relief from the automatic stay is clearly erroneous, and is due to be reversed. *See In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir.1984) (Where the record supported the bankruptcy court's determination that the debtor did not have any equity in the secured property, relief from the automatic stay was properly granted.)

For the foregoing reasons, the court finds that all of the Bankruptcy Court's decisions embodied in that court's October 9, 1990 opinion are due to be reversed. A separate order conforming to this memorandum will be entered contemporaneously herewith.

### ORDER

In accordance with the Memorandum of Decision this day entered, it is ORDERED, ADJUDGED and DECREED that the decisions of the Bankruptcy Court reflected in the October 9, 1990 memorandum of decision are REVERSED and this matter is REMANDED to the Bankruptcy Court for further proceedings not inconsistent with such Memorandum of Decision.

---

11. The manager of the Credit Union testified at the hearing before the Bankruptcy Judge that loan officers employed by the Credit Union usually consult the NADA Southeastern Edition used car guide in determining the value of a used vehicle. (Tr. p. 11). The NADA guide lists an average trade-in value of $3000.00 for a 1986 Dodge Ram truck, and an average retail resale value of $4200.00. (Exhibit F). However, the debtor testified at the hearing that his truck had been wrecked once, and that, in his opinion, its value was approximately $1900.00. (Tr. p. 20).

12. The appellee undisputedly owes $1674.25 principal on the August 10, 1988 truck loan, and $384.41 on the January 14, 1989 advance. Since the truck served as security for the January, 1989 advance as well as the August 10, 1988 loan, the total amount of encumbrances against the truck thus equals at least $2058.66, not including interest.