**In the Matter of Linda Kathleen BRADY, Debtor.**

**Bankruptcy No. 94–30298 HCD.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Aug. 31, 1994.

Fred R. Hains, South Bend, IN, for Linda Kathleen Brady.

Joseph R. Spillane, South Bend, IN, for Notre Dame Federal Credit Union.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

On June 17, 1994, Notre Dame Federal Credit Union ("Notre Dame") filed its MOTION TO APPROVE REAFFIRMATION. On July 5, 1994, Fred R. Hains, counsel for the debtor, filed his OPPOSITION TO MOTION TO APPROVE REAFFIRMATION. The court held a hearing on the motion on July 21, 1994, and took the matter under advisement on July 27, 1994. For the reasons set forth below, the court grants Notre Dame's motion.

### Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200.1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2) over which this court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014.

### Background

On February 24, 1994, Linda Kathleen Brady, the debtor, filed her voluntary petition under Chapter 7 of the Bankruptcy Code. On April 15, 1994, the debtor and Notre Dame filed two REAFFIRMATION AGREEMENTS, wherein the debtor agreed to reaffirm her car loan with Notre Dame subject to a security interest in her 1991 Oldsmobile Calais and indebtedness owing on a personal line of credit, also described as an overdraft protection plan. Debtor's counsel executed the DECLARATION OF COUNSEL relating to the car loan, but declined to sign the declaration relating to the debt on the line of credit. In his DECLINATION OF COUNSEL filed on April 15, 1994, debtor's counsel explained that although the debtor was fully informed and entered into the REAFFIRMATION AGREEMENTS volun-

tarily, he is unable to attest that reaffirmation of the debt owing on the personal line of credit does not impose a hardship upon the debtor or a dependent of the debtor. Debtor's counsel stated that he believes that reaffirmation of the automobile loan is in the debtor's best interest because she must have reliable transportation to keep her job. Opp. to Mot. to Approve Reaff. at 1. Debtor's counsel indicated that he does not wish to jeopardize the debtor's reaffirmation on her automobile, but believes that the court should determine whether reaffirmation of the second obligation to Notre Dame is in the debtor's best interest. On June 3, 1994, the court granted the debtor a discharge under 11 U.S.C. § 727.

In its MOTION TO APPROVE REAFFIRMATION Notre Dame explained that the debtor has two accounts with Notre Dame: one which is secured by her automobile and the debt on the line of credit which is subject to a cross collateralization clause (contained in the SECURITY AGREEMENT executed in connection with the car loan) that pledged the vehicle as collateral for future indebtedness. Notre Dame submitted that it has agreed to permit the debtor to reaffirm both obligations and retain her credit privileges at Notre Dame. Notre Dame indicated, however, that it expressly conditioned reaffirmation of the car loan on reaffirmation of the debt owing on the line of credit. Notre Dame asked the court to approve the REAFFIRMATION AGREEMENT not signed by counsel or, alternatively, permit it to rescind the agreement relating to the automobile loan.

At the reaffirmation hearing Notre Dame's counsel represented that the car loan balance is approximately $8,100 and the line of credit balance is approximately $3,025. Notre Dame's counsel pointed out that the cross collateralization clause contained in the SECURITY AGREEMENT which the debtor executed in connection with the automobile loan stated in relevant part:

THE SECURITY FOR THE LOAN—By signing this security agreement in the signature area or by signing the statement referring to this agreement on the back of the check you receive for your loan, you give the credit union what is known as a security interest in the property described in the "Security Offered" section. The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the loan or any extensions, renewals or refinancing of the loan. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give the credit union more property as security if asked to do so.

WHAT THE SECURITY INTEREST COVERS—The security interest secures the loan described in the Truth In Lending Disclosure and any extensions, renewals or refinancings of that loan. It also secures any other loans you have with the credit union now or in the future and any other amounts you owe the credit union for any reason now or in the future, except that collateral which is your personal residence. If the property description is marked with a star (*), the property will secure only the loan described in the Truth In Lending Disclosure.

Exh. A to the REAFFIRMATION AGREEMENT at 1. Notre Dame's counsel stated that the court in *Rocket City Federal Credit Union v. Kennemer (In re Kennemer)*, 143 B.R. 275 (N.D.Ala.1992), found a cross collateralization clause of this nature to be enforceable and argued that Notre Dame has the right to refuse to permit the debtor to reaffirm only one of the secured obligations. The debtor's counsel submitted that as the payment on the line of credit equals more than 8% of the debtor's gross monthly income, reaffirmation of both obligations may not be in the debtor's best interest. He again noted that he believed that reaffirmation of the car loan was in the debtor's best interest because the debtor needs the vehicle to get to work but indicated that the debtor's indebtedness to Notre Dame likely will exceed the fair market value of her automobile if she reaffirms both obligations.

On her STATEMENT OF FINANCIAL AFFAIRS filed at the commencement of this case,[1] the debtor listed gross income of $16,-000 in 1993. The debtor listed Notre Dame as her sole secured creditor, holding a claim of $8,500 against her automobile. Sch. D at 1. The debtor's unsecured nonpriority obligations totalled $9,584.83, including a $2,500 obligation to Notre Dame. Sch. F at 3. The debtor's SCHEDULE I stated that she is divorced and receives monthly support of $671.66 for her three minor children. Sch. I at 1. The debtor has been employed as a business clerk at the University of Notre Dame for four years. *Id.* Her current monthly gross income from her employment is $1,625.84, bringing her total gross monthly income to $2,297.50. *Id.* The debtor listed net monthly income of $1,386.24 with the following deductions:

| | |
|---|---|
| Payroll taxes and social security | $326.50 |
| Insurance | 25.00 |
| Group Life Insurance | 1.14 |
| Notre Dame Credit Union—line of credit | 232.00 |
| Staff Pension | 39.62 |
| Notre Dame Credit Union—car payment | 247.00 |
| Notre Dame Credit Union—savings | 40.00 |
| Total | $911:26 |

1. The court takes judicial notice of the record in this case.

2. The section states in relevant part:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to an extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor or a dependent of the debtor; ·

*Id.* at 1-2. The debtor's SCHEDULE J reflects current expenditures of $1,332.72 per month, including a $197.05 monthly installment payment to American General Finance, leaving extra income of only $53.52 per month. Sch. J at 1-2. SCHEDULE F states that the obligation to American General Finance is a personal loan with a balance of $1,270.95. Sch. F at 1. On February 24, 1994, the debtor filed her INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION, indicating that she intended to retain the 1991 Oldsmobile Calais and reaffirm the obligation to Notre Dame. St. of Int. at 1-2.

*Discussion and Decision*

Title 11 U.S.C. § 524 sets forth the requirements for approval of a reaffirmation agreement.[2] The issue before the court is whether reaffirmation of the debtor's obligations to Notre Dame should be approved. The question is twofold. The court must determine whether Notre Dame is entitled to condition the debtor's proposed reaffirmation of her car loan on reaffirmation of other indebtedness to Notre Dame. In addition, the court must ascertain whether the reaffir-

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of the rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor;

. . . .

(d) [I]f a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall—

.    .    .    .    .

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

11 U.S.C. § 524(c) and (d) (Callaghan 1993).

mation agreements impose an undue hardship on the debtor or a dependent of the debtor and are in the best interest of the debtor. The court will address these matters in turn.

### 1. Creditor's right to condition its consent to reaffirmation of one debt on reaffirmation of other indebtedness

Courts are split on the issue of whether a creditor may require a debtor to reaffirm other indebtedness as a condition for consenting to the reaffirmation of a secured obligation. Most courts have addressed this question in the context of a debtor's action against a creditor for alleged violation of the automatic stay. The court in *In re Briggs*, 143 B.R. 438, 460 (Bankr.E.D.Mich.1992), determined that a credit union has the right to make reaffirmation of unsecured indebtedness a prerequisite for permitting the debtor to reaffirm a secured loan. In concluding that such a policy does not violate § 362(a)(6), the court noted:

> While the Code emphasizes that a reaffirmation agreement must be "voluntary" on the debtor's part, *see* §§ 524(c) and (d), it is also clear that a creditor need not consent to such an agreement unless the terms are acceptable to it. *See [Gen'l Motors Accept. Corp. v. Bell (In re Bell) ]*, 700 F.2d 1053, 1056 (6th Cir.1983) ("[Section] 524(c) facially contemplates that the creditor, *for whatever reason,* may reject any and all tendered reaffirmation offers ...." (emphasis added)). Thus while linking the two loans in this fashion would likely influence a reasonable person's decision regarding repayment of the line-of-credit indebtedness, I see nothing unfair about it, and I accordingly hold that the Credit Union's policy did not violate § 362(a)(6).

143 B.R. at 460. *Accord Home Owners Funding Corp. of America v. Belanger (In re Belanger)*, 962 F.2d 345, 348 (4th Cir.1992) ("[R]eaffirmation requires the consent of the creditor in order to comply with § 524(c). This enables the creditor to compel the debt-

or either to meet the creditor's terms of reaffirmation or to surrender the property."); *Schmidt v. American Fletcher Nat'l Bank & Trust Co. (In re Schmidt)*, 64 B.R. 226, 229 (Bankr.S.D.Ind.1986), citing *In re Whatley*, 16 B.R. 394 (Bankr.N.D.Ohio 1982).[3] *Contra Green v. Nat'l Cash Register Co. CI Corp. System (In re Green)*, 15 B.R. 75 (Bankr.S.D. Ohio 1981) (holding that a creditor violates the automatic stay when it withholds approval of a reaffirmation agreement because the debtor declines to reaffirm an unsecured debt).

██ The court agrees with those decisions holding that a creditor has the right to condition its acquiescence to a reaffirmation agreement upon the reaffirmation of other indebtedness. The court believes that reaffirmation is an "invitation to negotiation" and that either party may decline to reaffirm for any reason. *Bell,* 700 F.2d at 1056. If a Chapter 7 debtor feels that the creditor is making unfair demands, he or she may elect to redeem the collateral, return it to the creditor, or convert to Chapter 13 and cram down any undersecured portion of the indebtedness. *In re Edwards,* 901 F.2d 1383, 1387 (7th Cir.1990); 11 U.S.C. §§ 521 and 1325(a)(5)(B)(i) and (ii). "[A] debtor does not have the right to compel a creditor to accept 'partial' reaffirmation of an undersecured indebtedness," *Briggs,* 143 B.R. at 460, or unilaterally force the creditor to agree to a particular agreement. *In re Pendlebury,* 94 B.R. 120, 123 (Bankr.E.D.Tenn.1988), citing *Vinson v. Farmer's Home Admin. (In re Vinson),* 5 B.R. 32 (Bankr.N.D.Ga.1980). The *Pendlebury* court noted in considering a debtor's motion to strike a provision for attorney's fees in reaffirmation agreements:

> In effect, the debtors now invite the court to join the reaffirmation process and dictate to [the creditor] what it can and cannot include in its agreements in order to make those agreements palatable to the debtors and their attorneys. Not only is such a procedure not sanctioned by § 524(c), its implementation could, it ap-

---

.3. The *Whatley* court pointed out that the debtor could have filed her petition under Chapter 13 of Bankruptcy Code and paid the fair market value of her automobile in installments pursuant to 11

U.S.C. § 1325(a)(5)(B)(i) and (ii); instead she chose to file a Chapter 7 petition and is bound by the provisions applicable to that chapter. *id.* at 397.

pears, make the court the chief architect of all future reaffirmation agreements. If debtors were entitled to call upon the court to determine the propriety and amount of attorney's fees requested by secured creditors would they not also be entitled to call upon the court to determine appropriate interest rates, lengths of extensions of contract payment terms, default provisions, and other terms all of which are the proper subject of negotiation under § 524(c).

94 B.R. at 126. As § 524(c) does not require reaffirmation of any debt, the court concludes that debtors are not entitled to reaffirm selective obligations against the will of their creditors.

2. *Do the reaffirmation agreements impose an undue hardship on the debtor or a dependent of the debtor and are they in the best interest of the debtor?*

■ The court next must consider whether reaffirmation of the debtor's obligations to Notre Dame imposes an undue hardship on the debtor or a dependent of the debtor and is in the best interest of the debtor. Reviewing the facts, the court concludes that reaffirmation of the debtor's obligations to Notre Dame does not impose an undue hardship on the debtor or a dependent of the debtor and is in the debtor's best interest. The debtor's counsel has indicated that the debtor needs reliable transportation to keep her job. Although the indebtedness which the debtor seeks to reaffirm likely will exceed the fair market value of her automobile, the debtor's schedules indicate that she will have sufficient income to repay the indebtedness. The debtor's SCHEDULE J sets forth current expenditures of $1,332.72 per month, including a $197.05 monthly installment payment to American General Finance, leaving extra income of $53.52 per month. As the debtor's statement of intention does not indicate that the debtor intends to reaffirm the obligation to American General Finance, she will have $250.57 remaining after paying all of her bills each month. The court thus concludes that reaffirmation of the obligations to Notre Dame will not impose an undue hardship on the debtor or her dependents.

The court also concludes that the reaffirmation agreements are in the debtor's best interest. The court notes that if the debtor chose not to reaffirm the indebtedness to Notre Dame, she likely would need to borrow money to obtain other reliable transportation. Given her credit history and her bankruptcy filing, the court is uncertain whether any other creditor would be willing to lend her money to buy a car. If the debtor is able to find financing, the terms are apt to be unfavorable to her. By reaffirming both obligations to Notre Dame, the debtor is assured of having reliable transportation at an affordable cost. In addition, she is able to retain her credit union membership and the benefits thereof, including her checking account, an interest-bearing savings account, automatic loan payments, direct deposit privileges, etc. The debtor also gains the opportunity to reestablish her credit worthiness with a reliable lender. The court determines that these benefits outweigh the drawbacks of reaffirming the indebtedness. The court therefore approves the reaffirmation agreements, finding that they comply with the requirements of § 524(c)(6).

### Conclusion

The court grants Notre Dame's MOTION TO APPROVE REAFFIRMATION, finding that: (1) Notre Dame has the right to condition its consent to reaffirmation of one debt on reaffirmation of other indebtedness; and (2) the debtor's reaffirmation of her obligations to Notre Dame will not impose an undue hardship on the debtor or her dependents and is in the debtor's best interest. An appropriate judgment will be entered.

SO ORDERED.