**In re Rene & Vickie AGUIRRE, Debtors.**

**Bankruptcy No. 94–20557.**

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

Oct. 27, 1994.

Peter Bagley, for debtors.

Thomas W. McDonald, Chapter 13 Trustee.

Frank R. Vargas, for Saginaw Automotive Credit Union.

## MEMORANDUM OPINION ON CONFIRMATION OF THE DEBTORS' CHAPTER 13 PLAN

ARTHUR J. SPECTOR, Bankruptcy Judge.

The Debtors filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on June 8, 1994. That date was one day after they received their chapter 7 discharge in Case No. 94–20214.[1]

In this case, Saginaw Automotive Federal Credit Union objected to the confirmation of the plan and so a full evidentiary hearing was conducted. The Debtor has the burden of proof on each element necessary for confirmation of a chapter 13 plan. *In re Caldwell,* 895 F.2d 1123, 1126 (6th Cir.1990); *see also In re Luchenbill,* 112 B.R. 204, 208 (Bankr. E.D.Mich.1990) (chapter 12); *In re Adam,* 92 B.R. 732, 736 (Bankr.E.D.Mich.1988) (chapter 12).

Mr. Aguirre testified that when he and his wife filed the chapter 7 case, they owned a truck and a van. During the course of the chapter 7 proceeding, they sought to reaffirm this obligation with the credit union with respect to the van but to surrender the truck. The credit union refused to allow them to reaffirm the debt for the van under these circumstances. Accordingly, when the chapter 7 case was concluded, the Debtors were confronted by the possibility (pursuant to *In re Bell,* 700 F.2d 1053 (6th Cir.1983)) of having both their truck and van repossessed. For that reason, and after consultation with their counsel, the Debtors filed this chapter 13 case.

Mr. Aguirre also testified that the family's income and expenses as listed in their chapter 7 case had not changed by the time they

---

1. This chapter 13 case was filed while the chapter 7 case was still being administered by the trustee. Although the trustee filed a "No Asset Report," on August 3, 1994, the case was still technically open when this chapter 13 case was filed. In fact, set for hearing at the same time as the confirmation hearing in this case was the Debtors' motion in the chapter 7 case to avoid and recover (ostensibly under 11 U.S.C. § 522(h)) $1,610.24 of involuntary transfers allegedly effected by a judgment creditor. "Filing Chapter 13 during administration of a Chapter 7 case, even if not per se prohibited, has been considered by several courts to be strongly indicative of bad faith for purposes of dismissal under 11 U.S.C. § 1307 and for purposes of the 'good faith' condition for confirmation in 11 U.S.C. § 1325(a)(3)." 1 K. Lundin, *Chapter 13 Bankruptcy* § 1.80 (2d ed. 1994); 5 W. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 115:6 (1994) ("The better approach for a debtor considering the filing of a second or successive bankruptcy case is to wait until the prior case has been closed before refiling. Such a debtor should be prepared to demonstrate good faith in the subsequent Chapter 13 case.")

filed their chapter 13 case. The Debtors have been making their chapter 13 interim payments since this case was filed and have some money left over at the end of the month. Inasmuch as all of Mr. and Mrs. Aguirre's debts were discharged in their chapter 7 case, the only creditor listed in the chapter 13 case is the credit union which holds solely an *in rem* claim against the van. (The truck was repossessed already). The entirety of the Debtors' plan, therefore, is to pay the value of the van, which the plan fixed at $12,500, to the credit union, together with interest at the contract rate. Their plan is set to last a mere nineteen months.

Because the Debtors have the ability to fund a meaningful repayment to their (now former) unsecured creditors and had such an ability even at the inception of their chapter 7 case, the Court determines that this plan was not filed in good faith. 11 U.S.C. § 1325(a)(3). Therefore, the plan will not be confirmed.

■ In *Memphis Bank & Trust v. Whitman*, 692 F.2d 427, 432 (6th Cir.1982), the Court of Appeals directed bankruptcy courts to exercise their broad equitable discretion to refuse to confirm a plan when good faith is not firmly established. The Court explained in subsequent opinions that a plethora of

factors should be considered when making the good faith/bad faith determination. *See Luchenbill*, 112 B.R. at 208–09 (citing the Sixth Circuit precedents and listing the factors). Of course, not all of the factors are present in each case. After considering those factors which are relevant (especially factors 1, 2, and 4–9 identified by *In re Doersam*, 849 F.2d 237 (6th Cir.1988)), and as the finder of fact, the Court determines that the plan was not proposed in good faith.

■ When their chapter 7 case was filed, the Debtors had the ability that they still have today to pay $165.00 per week to a chapter 13 trustee, who would disburse it, less his commission and expenses each month, to the credit union on the van loan, yet still provide a 71 cent on the dollar return to the general unsecured creditors.[2] Instead of going that route, the Debtors chose to discharge their obligations in chapter 7 without a meaningful attempt at repayment, and then to obtain the benefits of chapter 13 without the concomitant obligations. Although so-called chapter 20's are not *per se* forbidden, *In re Barrett*, 964 F.2d 588, 589 (6th Cir.1992) (a "chapter 33": two successive 13's following a chapter 7),[3] when the debtors have the ability in their first case to make a meaningful repayment to their

---

**2.** If the Debtors had originally filed a chapter 13, providing for weekly payments to the trustee of $165.00 and surrendering the truck while keeping the van, the plan mathematics would have looked like this:

| | |
|---|---|
| $165 × 156 weeks = | $25,740.00 |
| Less: | |
| Trustee commission + expenses @ 7% | $ 1,801.80 |
| Attorney fee (UAW–GM Legal Services Plan is prepaid legal insurance) | $ 0.00 |
| Credit Union—van (Obtained from worksheet attached to present plan, which figure includes $12,500 principal + $1,300 interest) | $13,800.00 |
| Available to pay to unsecured creditors | $10,138.20 |

Since the total of all unsecured claims listed in the chapter 7 case was $16,842, even if all creditors filed proofs of claim (something which rarely happens), each creditor could have expected a significant dividend. In addition, in this district,

confirmation occurs some four or five months after a case is filed. Therefore, the Debtors' interim payments under 11 U.S.C. § 1326(a) would have resulted in an additional $1,841.40 ($165 × 12 weeks = $1,980 less $138.60 trustee commission and expenses). The result is that creditors could have been paid an aggregate of $11,979.60 ($10,138.20 + $1,841.40) for a dividend of 71%.

In fact, if the Debtors' motion to recover allegedly preferential transfers filed in their chapter 7 case, *see* n. 1, is meritorious, the actual dividend to general unsecured creditors in the first case had it been a chapter 13 would have been 73%. ($11,979 + [$1,610.24 less 7% trustee commission = $1,497.99] = $13,477.59 / [$16,842 + $1,610.42] {if the transfers are recovered, the transferee is entitled to increase its unsecured claim *pro tanto* } = 73%.)

**3.** "[H]owever, serial or multiple filings are a factor indicative of a lack of good faith for purposes of dismissal under § 1307 and for purposes of the "good faith" requirement for confirmation in § 1325(a)(3)." 1 K. Lundin, *Chapter 13 Bankruptcy* at § 1.81.

unsecured creditors, and choose not to, they ought to be precluded, absent special or changed circumstances, from "gaming" the system by turning the "7" into a "20." *See* 2 K. Lundin, *Chapter 13 Bankruptcy*, § 5.19 (2d ed. 1994) ("A debtor with previous bankruptcy experience should be prepared with evidence of changed circumstances justifying the repetitive filing."); *cf. Barrett* (chapter 13 plan filed in good faith because the debtor's circumstances had changed and now justified a chapter 13). Such manipulation is properly frowned upon by most courts.

When asked why he did not choose to file a chapter 13 originally, Mr. Aguirre could come up with no understandable response. He could not explain any change in circumstances (other than the fact that the credit union declined to negotiate a reaffirmation agreement).[4] There being no special or changed circumstances to explain the chapter 13 on the heels of a chapter 7 discharge, the Court finds that the Debtors intended to avoid the obligation of paying unsecured creditors while obtaining the benefits of chapter 13 nonetheless and therefore that the plan was not filed in good faith.

Accordingly, the Court will enter an order denying confirmation of the plan and dismissing the case.

4. Of course a creditor is free to negotiate or not to negotiate a reaffirmation agreement with its debtor. *In re Briggs,* 143 B.R. 438, 450, 27 C.B.C.2d 874 (Bankr.E.D.Mich.1992); *see also In re Brady,* 171 B.R. 635 (Bankr.N.D.Ind.1994).