**CINCINNATI CENTRAL CREDIT UNION**

v.

**HARPER.**

Hamilton County Municipal Court, Ohio.

No. 94 CV 04776.

Decided May 3, 1995.

*Reisenfeld & Statman* and *John L. Day, Jr.,* for plaintiff.

*Daniel E. Whiteley, Jr.,* for defendant.

ALBERT J. MESTEMAKER, Judge.

## I. NATURE OF THE CASE

This civil suit is an action by the plaintiff, Cincinnati Central Credit Union ("CCCU"), seeking judgment against the defendant, Yvonne Harper, in the sum of $5,026.60 plus interest at the rate of 10.9 percent from November 25, 1994 and for the plaintiff's cost on a revolving credit loan agreement between the plaintiff and the defendant.

In response thereto the defendant claims that the plaintiff failed and neglected to disclose to her the cost of the credit life/credit disability insurance that she elected to have as part of her loan agreement with the plaintiff, and which she claims is a violation of the Truth in Lending Act, as contained in Section 1638(a)(3), Title 15, U.S.Code, and that by reason of said violation, she alleges in her counterclaim that she is entitled to recover twice the amount of that portion of the finance charge that represents the cost of this insurance, which is $3,895.20 plus her attorney fees.

## II. STATEMENT OF ESSENTIAL FACTS

On April 23, 1986, the plaintiff and the defendant entered into a revolving credit agreement whereunder the defendant became a member of the plaintiff credit union. The agreement, which is represented by Plaintiff's Exhibit One consisted of a revolving credit application, note, plan, agreement, and truth in lending disclosure in which the plaintiff's credit committee approved a revolving credit loan limit in favor of the defendant with a loan limit of $6,500 secured by a 1982 Chevrolet Camaro automobile.

This revolving credit loan plan established an annual percentage rate finance charge in the amount of 13.5 percent and required a minimum monthly payment that was to be collected by CCCU from the defendant by transferring loan payments together with all finance charges incidental thereto from the defendant's share account to which deposits were made on her behalf by her then-employer, Diamond International Corporation.

The plan provided on page one (special form 396–OE) of Plaintiff's Exhibit One, Item I, as follows:

"Upon approval, the credit union may from time to time make one or more advances to the undersigned member(s) who may pay the balance in full or in part at any time without penalty except that minimum periodic payments are required on each loan account hereunder regardless of any prepayments, as long as any balance exists hereunder."

The remainder of Plaintiff's Exhibit One consists of a revolving credit request voucher executed by the defendant that establishes the principal amount of the loan to be $6,500 at an annual percentage rate of 13.5 percent; calls for minimum monthly payments in the amount of $195 to be transferred from savings secured by a 1982 Chevrolet Camaro automobile. The reverse of this form explains the two types of insurance available to borrower, being credit life/credit disability insurance coverage. The next form included in this exhibit is the cost disclosure for the credit life/credit disability insurance, which establishes the insurance cost for *open end loans*. This form was also executed by the defendant, together with the insurance request and authorization form, the application for level rate credit life/credit disability insurance coverage, an acceptance form (752–9025), and finally a security agreement.

It must be noted at this point that the revolving credit request voucher form referred to above has a handwritten notation affixed, which states, "refinanced 3/10/88."

It is undisputed that this "plan" contained all disclosures required by Title 15, U.S.Code, including a cost disclosure for credit life/credit disability insurance.

By March 10, 1988, this loan had been paid down to a balance of $3,790.51 by the defendant through transfers from her savings account.

On or about March 10, 1988, the defendant advised CCCU that she desired to borrow additional funds in order to purchase a new automobile, a 1988 Chevrolet Nova. Due to the fact that her revolving credit plan limit had to be increased above the original authorized amount of $6,500, the defendant was advised that she would have to execute a *new* revolving credit plan. An additional reason given to her for the need to execute a new plan was the reduction in her finance charge from 13.5 percent to 10.9 percent.

The second revolving credit plan, which is Plaintiff's Exhibit Two, reflects the new credit-loan limit totaling $12,587 and establishes the new finance charge rate. This exhibit also contains a revolving credit request voucher that states as follows:

"You hereby request an advance in the amount of $8,795.93 to be *added* to your loan balance, if any, this subject to the terms and conditions of your revolving credit agreement. The purpose of the advance is 88 Chev. Nova and you request an optional payment of $_____ initials _____." (Emphasis added.)

This form also states that the type of the transaction is "*add-on*"; states the old and new balances as well as the amount of the add-on, $8,795.93; the minimum payment required; that it is to be transferred from savings; and that it is secured by an '88 Chevrolet Nova. This form also states that the member requests credit life/credit disability insurance coverage on this add-on. The final

form comprising Plaintiff's Exhibit Two is the security agreement for the 1988 Chevrolet Nova.

It is undisputed that the form not in existence as part of the transaction of March 10, 1988 is the cost disclosure of the level-rate credit disability and/or credit life insurance. It is the nonexistence of this document that forms the basis of the defendant's counterclaim. It is also undisputed that the cost of credit life/credit disability insurance was a part of the total finance charge for this add-on loan.

Plaintiff's Exhibit Three is the record of payments and charges maintained for this account, including all charges for the aforementioned insurance, together with the record of the undisputed fact that in 1993 the defendant became delinquent in her payments on the revolving loan. As a result of these delinquencies in payments, CCCU repossessed the 1988 Chevrolet Nova automobile and sold it at a public auction on November 4, 1993 for $2,550, the net proceeds of which were applied to the defendant's account.

At trial the defendant testified that in May 1993, she was injured in an automobile accident, which prevented her from working for several months and from making her minimum loan payments, and that when she advised William Lammers and Randy Adams, the plaintiff's employees, of this fact. Randy Adams promised to mail her the necessary forms to enable her to apply for credit disability insurance, but the forms were never provided to her as promised.

This testimony concerning a request for the disability insurance claim forms by the defendant was not refuted by the plaintiff at trial.

## III. ISSUES

The court must decide the type of transaction that constituted the advance of credit to the defendant by CCCU. If the credit extended to the defendant was an open-end consumer credit plan, as the plaintiff claims, then the disclosures required are governed by Section 1637, Title 15, U.S.Code, and need to be given only once before the account is opened. On the other hand, if the type of transaction that constituted the advance of credit to the defendant was what is often referred to as a "closed-end credit plan," as the defendant claims, then the disclosures required are governed by Section 1638, and for each transaction the creditor must make full disclosure of each charge or item of cost constituting the "finance charge," as is set forth in Section 1638(a)(3).

An additional issue that must be decided by the court, if the court finds that the credit extended to the defendant is governed by Section 1638, is whether the defendant can maintain her counterclaim against the plaintiff for violating Section 1638, a counterclaim that is controlled by Section 1640, Title 15, U.S.Code, which

section provides for damages equal to twice the amount of any finance charge made in connection with the transaction, despite the fact that her counterclaim was filed more than one year after the date of the occurrence, which in this case is October 10, 1988, the counterclaim having been filed on May 3, 1994, and her amended counterclaim having been filed on December 8, 1994; or whether the one-year statute of limitations for her counterclaim is extended by her defense of recoupment and/or setoff.

## IV. DISCUSSION OF THE ISSUES

In order to determine exactly what type of credit plan was entered into between the plaintiff and the defendant, we must first refer to Section 1602(i), Title 15, U.S.Code, which defines the term "open-end credit plan" as follows:

"(i) The term 'open-end credit plan' means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan which is an open-end credit plan within the meaning of the preceding sentence is an open-end credit plan even if credit information is verified from time to time."

Regulation Z, Part 226, Truth In Lending Act ("TILA"), Section 226.2, Title 12, C.F.R., Definitions and Rules of Construction (x), construes "open-end credit" as follows:

"(x) 'Open-end credit' means consumer credit extended on an account pursuant to a plan under which (1) The creditor may permit the customer to make purchases or obtain loans, from time to time, directly from the creditor or indirectly by use of a credit card, check, or other device, as the plan may provide; (2) The customer has the privilege of paying the balance in full or in installments; and (3) A finance charge may be computed by the creditor from time to time on an outstanding unpaid balance."

Section 226.4, Title 12, C.F.R., Determination of Finance Charge (a), General Rule (5), provides as follows:

"(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless * * *."

Therefore, we can conclude that charges or premiums for credit life/credit disability insurance coverage are part of the finance charge, and as such must be disclosed to the debtor.

Section 1637, Title 15, U.S.Code, Open–End Consumer Credit Plans, provides in paragraph (a) as follows:

"(a) *Before opening any account* under an open-end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable." (Emphasis added.)

Following this opening statement in Section 1637 is a delineation of the items that must be disclosed to the debtor under an open-end credit plan.

Section 1638, Title 15, U.S.Code, Transactions Other Than Under Open–End Credit Plan, provides in paragraph (a) as follows:

"For *each consumer transaction* other than under an open-end credit plan, the creditor *shall* disclose each of the following items, to the extent applicable." (Emphasis added.)

Following this opening statement in Section 1638 is a delineation of the items that must be disclosed to the debtor under a transaction other than an open-end credit plan.

Section 226.17, Title 12, C.F.R., General Disclosure Requirements, is the regulation that determines the form and timing of disclosures required in a closed-end credit plan. The basic difference with regard to the two types of plans is that where the credit plan is open ended the disclosures are required *once before* the account is opened, and where the plan is closed ended the disclosure must be made *before the consummation of each transaction.* Section 226.17(b), Title 12, C.F.R.

The plaintiff has cited *Rocket City Fed. Credit Union v. Kennemer* (N.D.Ala. 1992), 143 B.R. 275, as authority for its position that the loans to the defendant herein were open ended for the purposes of Title 15. The court has reviewed all of the authorities submitted by the plaintiff and the defendant. In addition, the court has researched this issue independent of the authorities provided by counsel.

 Based upon the testimony, the exhibits, the cited authorities, and the court's own review, it is the conclusion of this court that the plaintiff and the defendant intended to and in fact did enter into an open-ended revolving credit plan on April 23, 1986, and that the plaintiff complied with all the requirements of Section 1637, Title 15, U.S.Code at that time. Evidence that the parties intended that the plan be an open-ended plan is borne out by numerous factors, including the cost disclosure of level rate credit disability and/or credit life insurance form being page three of Plaintiff's Exhibit One, which quotes insurance rates under the "open-end loans—example."

An additional determinative fact is the language contained in paragraph one of the Revolving Credit Application, Note, Plan, Agreement and Truth in Lending Disclosure, Plaintiff's Exhibits One and Two, which provide that "upon approval

the credit union may from time to time make one or more advances to the undersigned member(s)."

A review of the aforementioned language makes it clear that the plan in the case at bar was one in which the creditor reasonably contemplated "repeated transactions," as defined in Section 1602(i), Title 15, U.S.Code.

■ With regard to Plaintiff's Exhibit Two, page 2, revolving credit request voucher, it is clearly set forth that the transaction is an *add-on.* Therefore, the court concludes that the loan dated March 10, 1988, was not a new closed-end transaction requiring complete disclosure of all finance charges including the cost of credit life/credit disability insurance, but was rather an advance of credit added on to an existing loan balance wherein a new higher balance was created, with a lower interest rate and a higher minimum monthly payment.

The court finds as a matter of law that the transaction of March 10, 1988 was not a new loan, and, therefore, was not subject to the individual transaction disclosures required by Section 1638, Title 15, U.S.Code.

■ The defendant urges the court to find that the loan of March 10, 1988 was in fact a refinancing of the defendant's loan of April 23, 1985, which required full disclosure of all finance charges including the cost of credit life/credit disability insurance. As evidence of this argument, the defendant refers to the notation on page two of Plaintiff's Exhibit One, whereon a handwritten notation "refinanced 3/10/88" appears.

The court has reviewed the requirements of Regulation Z, Section 226.20, Title 12, C.F.R., Subsequent Disclosure Requirements, which states as follows:

"(a) *Refinancing.* A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation. The following shall not be treated as a refinancing."

Thereafter follows a delineation of the situations that do not constitute a refinancing.

A review of Section 226.20, Title 12, C.F.R. by this court leads to the conclusion that Section 226.20 is limited in its application to closed-end credit transactions. The reference to this subpart clearly limits the application of the refinancing theory to the disclosure requirements contained in Subpart C of Regulation Z, Closed–End Credit, Sections 226.17 through 226.24, and has no analogous situation or requirement under the regulations controlling *open-end credit* contained in Regulation Z, Subpart B, Sections 226.5 through 226.16.

All things considered the court determines that the revolving credit plan entered into between the plaintiff and the defendant in the case at bar was an open-end credit plan which required full disclosure of all finance charges to the defendant before her account was opened, and that the failure to disclose the cost of credit life/credit disability insurance to her on the loan of March 10, 1988 did not violate the Truth In Lending Act.

Having determined that the amount in the case at bar was an open-end consumer credit plan subject to less restrictive disclosure requirements than a closed-end transaction, the court is not required to make a decision concerning whether the defendant's counterclaim brought pursuant to Section 1640 was filed outside the period of one year as provided as a limitation by said section. Suffice it to say that if this court had found a violation on the part of the plaintiff, the court would have been inclined to agree with the defendant that the one-year statute of limitations would not be a bar, since her counterclaim is based on recoupment.

■ Despite this ruling that the plaintiff did not violate Truth In Lending Act requirements in the case at bar, the court finds that the plaintiff failed, as requested by the plaintiff, to furnish her with the applications promised to her by its employee that would have enabled her to file for benefits under the credit disability insurance coverage provisions as the result of the injuries that she sustained in an automobile accident in May 1993. Since the plaintiff offered no evidence to refute the testimony of the defendant on this issue, the court feels that her testimony must be taken as true. Had the plaintiff's employee assisted the defendant to apply for credit disability insurance, her loan might not have become delinquent and her automobile might not have been subject to repossession and sale.

It is therefore Ordered, Adjudged and Decreed, that the plaintiff, Cincinnati Central Credit Union, recover nothing from the defendant, Yvonne Harper, on its complaint, and that the defendant recover nothing from the plaintiff on her counterclaim, and that each party shall pay their respective costs herein.

This being a final appealable order, exceptions are reserved to both parties.

IT IS SO ORDERED.

*Judgment accordingly.*